City of Coving-
[TON
*vs.*
McNickle's Hs

Case 37.

Ord. Pet.

## City of Covington *vs.* McNickle's Heirs.

### APPEAL FROM BOONE CIRCUIT.

1. Trustees of towns have no power to convey ground which has been dedicated to the use of the public; and whether the legislature can constitutionally authorize them to do so is questionable. (*Louisville vs. Bank U. S , &c.*, 3 B. Monroe, 157; *Alves, &c., vs. Town of Henderson*, 16 *Ib.* 170; *Transylvania University vs. City of Lexington*, 3 B. Monroe, 25.)

2. In the construction of Statutes the general words in one clause may be restrained by the particular words in a subsequent clause of the same statute.

3. The right of the public to ground in a city or town, which has been dedicated to the use of the public, cannot be divested by a mere claim of title or possession, "or any thing less than actual private occupancy or exclusive use, evidenced by an inclosure, and so continued to be held adversely for twenty years before the assertion of the right of the public by suit or action."

4. When a party claims a possession under a void conveyance no demand of possession is necessary before suit brought to recover the possession.

5. Trustees of a town conveying a part of the public grounds dedicated to the use of the public, and receiving part of the price, not bound to tender back the price received before suing for the possession of the grounds, whatever they might be bound to do in a court of equity

[The facts of the case are stated in the opinion of the court.—Rep.]

*J. E. Spilman* for appellant—

Insisted on a reversal of the judgment of the circuit court on the following grounds:

1. Because the circuit court erred, in permitting the agreement between the trustees of Covington and Carneal and others, with the accompanying plat, to be used as evidence in the cause, and in refusing to exclude them on the plaintiff's motion.

2. Because said court erred in permitting each and all of the deeds offered by the defendants to be read as evidence, and in refusing, on motion of the plaintiff, to exclude them from the jury.

3. Said court erred, in permitting the deposition of Carneal to be read as evidence before the jury; and

in permitting the release of McNickle's heirs to Carneal, to be used as evidence of Carneal's release from
liability upon his warranty.

4. Because said court erred in refusing to give
the jury the fourth instruction asked for by the plaintiff.

5. Because said court erred, in giving the first,
third, fifth, and eighth instructions respectively, as
asked by the defendants; and,

6. In overruling the motion for a new trial.

We shall, with as much brevity as practicable, now
proceed to consider these points.

1. There are two reasons why the contract made
by the trustees with Carneal and others, and the accompanying plat, should not have been admitted as
evidence.   First, because no record had ever been
made of them in the Campbell circuit court, as required by the statute; and, therefore, as a link in the
chain of record title, it was of no validity.   Secondly, because it had no reference to the ground in contest, being confined to the "streets, alleys and lots,"
and, therefore, could have no bearing upon the question of boundary.   It was, consequently, only calculated to bewilder and mislead the jury, and should
have been excluded.

2. The deeds offered by the defendants were inadmissible as evidence of *title*, because the acts of the
legislature, under which the authority to make them
was claimed, did not authorize the conveyance of
any ground north of Front street, being confined to
the "streets, alleys and lots" that might be changed,
by the agreement above spoken of; and the trustees
had no power to convey the public grounds, except
so far as they were authorized by the statute. Those
deeds, therefore, so far as they relate to the land in
contest, viz: the land north of Front street between
that street and the river, were entirely inoperative
and void.   *Giltner vs. Trustees of Carrollton, (7 B.*

CITY OF COVING-
TON
vs.
McNICKLE'S HS *Mon.* 681;) *Buckner vs Trustees of Augusta,* (1 *Mar.*
9;) *Kennedy's heirs vs. City of Covington,* (8 *Dana,* 50;)
*Trustees of Augusta vs. Perkins,* (3 *B. Mon.* 440;)
*Rowan's ex'or vs. Town of Portland,* (8 *B. Monroe,*
237.)

Nor do we believe, that the facts of the case au-
thorized the use of these deeds as evidence of boun-
dary, and the court ought, on motion of the plaintiff,
to have excluded them from the jury. In order to
justify the use of a deed as evidence of boundary,
which is insufficient to confer title, there must be
shown an entry and possession of a portion of the
tract, with the intention of taking possession of the
whole boundary.

Now, we take the position confidently, that there is
no such proof of possession, in this case, *of any part
of the ground in contest,* as to justify the court in per-
mitting these deeds, utterly void as they were, made
without authority, and in flagrant violation of law,
to go to the jury. There is absolutely no evidence
of possession of this ground, adversely to the city, of
sufficiently ancient date to have matured or ripened
into a title, prior to the institution of this suit. It
will be borne in mind, that this suit was commenced
in 1850; and it will be further recollected that Car-
neal sold his residence and the rolling mill property
to McNickle, in 1831. And it was not until about
the month of June, 1831, that the building of the
rolling mill was commenced. Unless therefore there
has been some possession proved under this deed
from the trustees prior to that time, by Carneal, the
defense based upon lapse of time, must fail. There
is no pretense that Carneal ever occupied any part
of the ground between Second, or New street, and
the river, prior to his sale to McNickle. The whole
testimony shows, beyond the shadow of doubt, that it
was an open common, wholly uninclosed and unim-
proved in any way, perfectly free to ingress and
egress, by any and all persons who chose to use it,
up to the time that the building of the rolling mill

was commenced in 1831. But it may be insisted that Carneal was living immediately south of Second or New street, and owned all the land between his residence and the river, and therefore the possession of his residence gave him constructive possession of all the ground deeded to him by the trustees. There is scarcely plausibility in this position, and it is, certainly, very fallacious on close inspection. If a man obtain a deed to several distinct tracts of land, not *adjoining* each other, he does not, by entering upon one, obtain possession, constructively, of all.

Now, between Carneal's residence and the land in contest, there were two streets, Second and Front, which as effectually prevented the constructive extension of his possession, by virtue of the occupation of his residence, as if the tracts had been ten miles distant from each other. There must, then, have been an actual possession of this particular strip of ground, adversely to all the world, by Carneal, prior to 1831, or the claim of the defendants is destitute of any foundation. What is the evidence of such possession? Has there been proven a solitary act on the part of Carneal, in the slightest degree inconsistent with the possession and enjoyment, by the public, of this ground as a common for public use? He landed his boats there. What boats? Boats loaded with timber. For what purpose? To build his house: and where was his house? At a point which made this the most convenient landing point for his timber. And what did he do after he landed his boats, with timber? Why, wonderful to relate! he contrived a way, by laying down skids, to slide his timber up the bank, where he deposited it, until he removed it to his building for use.

Two or three questions present themselves, with reference to this evidence. First. Was not the use, made by Carneal, of the river shore at that point, precisely the use for which it was dedicated to the public? Secondly. Would he not have done just what he did, if he had had no private claim whatever to

CITY OF COVING-
TON
vs.
McNICKLE'S Hs

the landing? Thirdly. If any other person had de-
sired to land timber at that point for building purpo-
ses, would they have done either less or more than
Carneal did? Fourthly. After giving a rational an-
swer to the foregoing questions, can these acts be
characterized as acts of possession or ownership, so
as to authorize the introduction of a void deed, and
especially, when it is not satisfactorily shown, wheth-
er these acts took place prior or subsequently to the
execution of the deed? Do such acts even *tend* to
prove an adverse possession? And in this view of
the case, is it not evident, that the introduction of the
deeds was only calculated to bewilder and mislead
the jury? It is true, Carneal states in his deposition
that he had possession of this ground; but a man
may often suppose himself in possession when he is
not. Possession is a question to be determined by
*facts* and not by *opinions*. He says he tied his skiff
there, and where else should he have tied it? This
was the nearest and most convenient point to his res-
idence, and this was a legitimate use of the public
landing by any citizen. Who would not have done
the same thing, and what evidence is this of adverse
possession? As well might an old hunter claim pos-
session of a tract of land, because he had passed
over it in chasing the deer in early times. But, so
far as these facts are proven by the testimony of
Carneal, we contend they are not legitimately
in the cause, which is the third point to be consid-
ered.

3. We contend that the execution of the release of
Carneal from his warranty, by the heirs of McNickle,
was not so proved, as to authorize its introduction,
to show Carneal's competency as a witness. This
release was offered and an attempt made to read it,
upon a certificate of acknowledgement by the clerk,
before whom it purported to have been made. It was
objected to, on the ground, that the release was not
a recordable instrument; that the clerk had no offi-

cial authority to take the acknowledgment of such an instrument, and therefore his official certificate was no evidence of the execution of the writing. This objection was sustained; whereupon, J. W. Stevenson, Esq., was sworn, and testified to the hand writing of the parties; and the plaintiff still insisting upon his objection to the introduction of the lease, the objection was overruled, and the release and deposition of Carneal read. Now we insist that this was erroneous. For, although the certificate of the clerk was of no validity as an *official* act, still, it constituted him virtually a *subscribing witness*, and hence unless he was dead or out of the State, he alone was competent to prove the execution of this paper. If we are correct in this position, it results, that the court erred in permitting the deposition of Carneal to be read.

4. The next question in order, is, the alledged error of the circuit court in refusing to give the fourth instruction asked for by the plaintiff. That instruction was in these words:

"If the jury believe that the defendants, or those under whom they claim, did not take actual possession of the ground in contest, prior to the year 1831, they must find for the plaintiff."

This point we shall submit without argument.

5. We come now to the inquiry whether the instructions given on motion of the defendants below were a correct exposition of the law as based upon the facts. The instructions given were the first, third, fifth and eighth, in the series asked for by the defendants. The first is as follows:

"If the jury believe from the evidence, that the trustees of Covington and the corporate authorities of said town or city of Covington, had notice that Thomas D. Carneal and John K. McNickle and those claiming under them, claimed and held and possessed the ground in contest as their own, adversely to said town of Covington, for more than 20 years be-

fore the bringing of this suit, that they must find for the defendants, even though they believe that the ground in contest was originally vested in said trustees as a common for said town or city; and that they have a right to infer the beginning of such adverse possession by Carneal and McNickle and those claiming under them, from the date of the deed of the trustees of Covington, to Carneal, dated 22nd July, 1829, and the deed from Carneal to McNickle dated 10th May, 1831; provided they believe that said two deeds cover the ground in contest, and that Carneal entered into the possession at the date of the deeds."

We object to this instruction, not so much that it does not contain the law, as that it presents it in a manner so obscure, involved and misleading, and with such *incumbrances*, as to becloud and bewilder, rather than aid the jury in arriving at the truth. The allusion in the first part of the instruction to "notice" of Carneal and McNickle's "claim" is a wholly irrelevant and foreign idea, being a *dead weight* upon the legal proposition, and calculated to draw off the jury to the consideration of an immaterial fact. *Notice* of the *claim* without actual adverse possession, would amount to nothing, and such actual possession *without any notice* would be sufficient. Why, then, say any thing about "notice?" But, there is a more grave objection still to the latter part of the instruction, giving the jury the right to *infer* a possession from the *date* of the deed, provided they *believe* possession was taken at that time.

This is cumbersome and misleading. If the evidence shows v.hen possession was taken, if at all, there is no room for *inference*; and if it does not, they have no right to draw any inference such as is here contemplated. This instruction ought to have been liberally *pruned*, before it was permitted to go to the jury.

The next instruction given, is as follows:

"That the execution of the deed by the trustees of Covington to Carneal, dated 22nd July, 1829, if the jury believe it covers the ground in contest, and that Carneal and McNickle under him entered into possession of the same, at the date of the respective deeds, was a notice to said city of an adverse claim by Carneal and those claiming under him, and they have a right to [infer] adverse possession from that time."

This instruction is obnoxious to very much the same objections urged against the preceding one. It is evidently framed with a view to the *weak point* in the defense. There was a frightful dearth of evidence of *acts* of possession, and the effort was to supply this deficiency by *inferences* drawn from *notice of the claim* of Carneal. We insist that under the circumstances of this case, this question of notice cuts no figure. If the trustees of Covington had undertaken to do what they had the right to do, but there had been some irregularity in the execution of their deed, there might be some more plausibility (but not soundness even then) in this view of the question. But in this case, the trustees acted entirely outside of the scope of their authority. They therefore cannot be recognized as trustees in the execution of this deed, so far as it undertakes to convey the ground north of Front street. *Quoad* this strip of ground, their act is utterly void and could not operate even as a notice to those interested in the preservation of this strip as a common. It could only affect them as *individuals*.

To the fifth instruction, being the third which was given at the instance of the defendants, we shall urge no objection. It comprehends all that *ought* to have been stated in the preceding two, which we have already considered.

The eighth and last of the defendant's instructions is in these words:

"If the jury find that Carneal, and afterwards McNickle, was in the possession of the land in contest,

the occasional landing of boats at the landing did not interrupt such possession."

The bare statement of this proposition shows how utterly baseless is the claim of the appellees. Here we find the town of Covington, by virtue of the original dedication, in possession of this public landing. The title still remains in the city, unless it has either been conveyed away, or lost by lapse of time and *adverse possession*. But it is not pretended that there is any conveyance, and the only *facts* upon which this claim to adverse possession rests, are, the *occasional landing* of a skiff, and the landing of some building timber, at this shore. Now, it is contended, in the first place that these are such *decided* and unequivocal acts of ownership and adverse possession on the part of Carneal and those claiming under him, as to authorize a jury to award the land to them; and in the same breath, the court is asked to say, that precisely similar acts on the part of others will not disturb *their* possession. Out of their own mouths they stand condemned. Although, as an abstract proposition of law, the instruction asked for is correct, yet in its application to this case it is a two-edged sword, which, in the recoil, cuts the last thread, upon which hangs the hope of the appellees.

In this connection, we will state and consider briefly the last proposition, viz: the error of the court in refusing a new trial.

There is but one point in addition to those already presented which we propose to consider under this head. We aver it as our conviction that the verdict of the jury was flagrantly against the testimony, and the circuit court ought to have set it aside. If the town of Covington was constructively in possession of the ground in contest, prior to the alledged entry of those under whom the appellees claim, what is more undeniably true, than, that there must, in order to oust this possession, have been acts of control, ownership and adverse possession *inconsistent* with

the purposes of the dedication. The possession of the town must have been *overcome* by something *hostile* and of a superior character as an act of possession. One constructive possession cannot be overcome or ousted by another constructive possession. For, being equal in character and strength, the prior must prevail. A possession held by one individual, by occasionally going upon land for temporary purposes, cannot be ousted by acts of an equally transient character by another individual. If, then, the use made of this landing by Carneal was not inconsistent with its use by the public for similar or other purposes, these acts raise no presumption that any adverse holding was intended. As to the public, the acts were friendly, not hostile.

Now, until the year 1831, after the sale to Mc-Nickle, which was only 19 years prior to the institution of the suit, there is not a scintilla of proof, of any use or occupany of this landing, by Carneal, except for the very purposes for which it had been dedicated to the public; and his acts even of that character were too few to indicate any purpose or intention of personal claim or control. The possession of the town therefore was never interrupted or disturbed until the rolling mill was commenced in 1831, which is *one year* too late to furnish a defense to the action. So that there was absolutely nothing upon which to base the verdict of the jury, and they were manifestly deluded by the idea of "inferring" possession from the date of the deed on the ground of "notice" of Carneal's claim.

A reversal of the judgment of the circuit court is respectfully asked.

The following authorities are referred to: *Session acts*, 1814, *p.* 421; *ses. acts*, 1815, *p.* 631; *ses. acts*, 1825, *p.* 51; *ses. acts*, 1827, *p.* 18; *ses. acts*, 1828, *p.* 52; *ses. acts*, 1830, *p.* 52; *ses. acts*, 1833, *pp.* 708, 713; 8 *B. Mon.* 241; 8 *Dana*, 61; 7 *B. Mon.* 680; 1 *Mar.* 153; 7 *B. Mon.* 681; 1 *Mar.* 9; 8 *Dana*, 50; 3 *B. Mon.* 440; 8 *B. Mon.* 237.

CITY OF COVING-
TON
vs.
McNICKLE'S Hs

*John W. Stevenson* for appellees—

Argued—1. That the plaintiff failed to show title, and the motion for a non-suit should have been sustained.

There is but one demise in the declaration, and that in the name of the City of Covington. The act of 1815, establishing the town of Covington, vested the title to the ground on which the town was laid out in certain individuals, named in the act as trustees, but contained no words of succession, and consequently the title did not pass by operation of law to their successors. (*Kennedy's heirs vs. City of Covington*, 8 *Dana*, 56; *Trustees of Falmouth vs. Horton*, 4 *Littell*, 120; *Trustees of Augusta vs. Perkins*, 3. *B. Monroe*, 442.) Has this court ever decided that it is competent for the legislature to divest one set of trustees of a town of the legal title to the town property, and vest it in another set? This question was raised in the case of *Kennedy's heirs vs. Trustees of Covington, supra,* and in *Giltner vs. City of Carrollton*, 3 *B. Monroe*, 330, but not decided, though the court intimated that such an act might be construed to authorize the successors to the original trustees to convey the legal title which had never passed to them. (8 *Dana*, 58.) So too, the court has sanctioned deeds made by subsequent trustees of a town, to purchasers from their predecessors. It is not understood, however, that these decisions authorize an absolute divestiture of the legal title of the first trustees, by a mere act of legislation, nor is the case of *Johnson vs. Winn's heirs*, 4 *Litt.* 326, an authority in support of such a postulate.

It is however denied that the act of 1834, in spirit or by its terms, purports such a divestiture.

The trustees by the act of Dec., 1827, had been authorized to convey to Carneal the property in contest, and the act of January, 1829, had confirmed the conveyance. This court can look to these acts, and the action of the trustees under them, in giving construction to the act of 1834. Could the act of 1834 divest Carneal of property conveyed by the trustees

to Carneal, and by him to McNickle five years before? It is supposed it could not. If this act did not pass the title to the land in contest, and such title did not pass by operation of the act of 1815, then no title was shown in the City of Covington, and the motion for a non-suit should have been sustained.

2. The title passed from the trustees to Carneal under their deed to him, and they had authority to make the conveyance.

It is admitted that the town originally extended to the Ohio river.

It is undoubtedly true that the corporate authorities of a city or town, have no power to sell or otherwise dispose of the streets and alleys, public square, or other public property of the corporation, as private property, or divert them from the original purpose to which they were dedicated, unless authorized to do so by legislative enactment; the power of the legislature to give such authority, when the public interest requires it, and for "*just compensation*," can admit of no doubt.

But it is said that it was not intended, by the act, to confer authority to sell any part of the ground north of Front street, and that therefore the deed is void. If it was intended to sell the ground upon the river below Scott street, this court will not hesitate to give the act that construction. In the construction of the act, this court will look to the object intended to be accomplished by the enactment. If the public interest required a change in the plan of the town, and the owners of adjacent lots concurred in such a change, was it not competent for the legislature to confer authority to make it? Public streets are but like other public highways, subject to alteration, and even occlusion by the sovereign will for the common weal. " We do not admit," says this court, " that there is no power to change any portion of a street in any part of the city, without the consent of every proprietor of ground in the whole city, or without making compensation in money to every proprietor." (*Transylvania*

CITY OF COVING-
TON
vs.
McNICKLE'S Hs

*University vs. City of Lexington,* 3 *B. Monroe,* 28.) That the change made by the action of the trustees was demanded by the public interest is clearly shown, not less by the action of the trustees than by the owners of all adjoining lots. The intention of the act was to alter that portion of the town of Covington between Scott and Madison streets, binding on the Ohio river, in such manner as should be agreed on between the trustees and the owners of adjacent lots, and that it was to be permanent, is shown by its being required to be recorded.

The alterations contemplated were carried out by the arrangement made between the trustees and owners of adjacent lots and land; a plat was made thereof, and recorded. It was well understood by all the parties, and ratified and confirmed by the legislature in January, 1829; by the terms of this act the trustees were authorized and empowered to make, accept, and receive deeds of conveyance, which, when made and received, were to pass the titles to the respective grantees.

It cannot be denied that the act of 1827 did authorize the trustees to make any alteration north of Front street, and to convey any ground between Front street and the river. The preamble of the statute clearly shows the object. The act confers the power "to make any alteration in the street or streets, alleys, or lots of said town, as may be agreed upon by and between said trustees and the owner or owners of said town," in that part of Covington below Scott street, and between an alley running west between Third and Second streets to the Ohio. Here was a clear power to go to the river and make alterations between the designated alley, and below Scott street and the river. No reservation as to any ground between Front street and the river, but on the contrary, express authority to go to the river, and of course gave authority to dispose of all property within the designated limits. This construction of the act is required by all the rules of construction ap-

plicable to the construction of statutes, the context, the subject, the effect, and consequences, and the reason and spirit of the enactment. (*Mason vs Rogers*, 4 *Litt.* 337; *Philips vs Pope's heirs*, 10 B. *Monroe*, 172, 3.)

At the time of the conveyance the river had incroached upon Front street. Carneal owned all the lots binding on Front street, and a conveyance under the statute of Front street would include all the ground in contest, which the proof goes to show had been made by accretal and by cinders from the rolling mill. The statute authorized a conveyance to the margin of the river, because Front street was then the margin. Would not the conveyance extend his right to all the land covered by the water to the middle of the river? Such a constructive extension, says Chief Justice Robertson, of private right, undoubtedly results from a grant of land bounded by a river not navigable; and according to the common law no river was deemed navigable, in the technical sense, where the tide does not ebb and flow. (Whether this doctrine applies to American rivers, as the Ohio, Missouri, &c., has not been settled by this court.) This is the doctrine of the American courts, sanctioned by public policy. (*Cole vs. Haynes*, 22 *Vermont Rep.*, 589.)

If there existed, at any time, any doubt of the authority in the trustees to pass the title, the long acquiescence, the multiplied recognitions by the city of Covington in the sale, and the additional fact that all the ground north of Front street has been formed by accretal since 1831, would not only conduce persuasively to establish the right in the grantee, but to operate as an estoppel. (*City of Louisville vs Bank U. S.* 3 B. *Monroe*, 144.)

If the foregoing views be correct it follows, that the circuit court erred in its exposition of the law to the jury, to the prejudice of the defendant, and the verdict should not be disturbed. The whole instructions to the jury were based upon the invalidity of

Carneal's title under the deed from the trustees for the ground north of Front street. Even if the deed had been void it was a question for the jury to decide, whether Carneal did not take actual possession of the ground in controversy, twenty years before the institution of this suit, and that possession continued adversely ever since. No inclosure of the ground was necessary, whether Carneal's deed was valid or not. If one enters upon land without color of right, his possession extends no farther than his inclosure, and the possession continued for twenty years gives right; but if the entry be under color of right, by deed or other written document, he acquires possession to the extent of the boundary specified in the writing, whether his title be good or not. (*Elliott vs Pearl*, 10 *Pet.* 412; *Emery vs Burnett*, 11 *Pet.* 41; *Smith's Leading Cases, Hare & Wallace's Notes*, 500.)

3. If the deed to Carneal is treated as void it was nevertheless necessary that there should have been a demand of the possession before suit. There is no proof of any demand. The sale by the trustees, whether the deed be void or not, is equivalent to a parol contract of sale, and in the case of a parol sale of land no recovery can be had of the purchaser let into possession until there is a refusal to surrender the possession to the vendor. (*Smith vs Mobberly*, 15 *B. Monroe*, 70; *Harle vs McCoy*, 7 *J. J. Marshall*, 318.)

*Thos. A. Marshall*, on the same side—

Trustees of cities or towns may close a street or public way in the town, and none can complain but the inhabitants or lot owners in the immediate vicinity, whose means of access to other parts of the city or town is affected. The trustees represent the general interest and will of the state constituting the largest public.

It is well settled that trustees of towns have not, under the general laws, a right to pass to individuals, for private use, any part of the street, alley, or other

grounds of which they hold the title for the uses of the town and public; and it has been decided, that it was not in the power of the individual citizens— certainly not in the power of a portion of them—to transfer these uses so as to vest them exclusively in the transferee. But it has not been decided that the trustees may not, under a direct authority from the legislature, and with the consent of the citizens whose interest is immediately affected, exchange a small and useless portion of the public ground for other ground, deemed necessary or more advantageous to the town, and it is presumed no such decision will be made.

The transaction brought in question in this case was an exchange between the trustees of Covington and T. D. Carneal, by which the trustees, in consideration of a certain parcel of ground conveyed to them for the use of the town, and which was in fact made a street where one was deemed necessary, conveyed to Carneal other small parcels of ground on which streets and alleys had before been located, and also a small part of the slip lying in front of one of the streets conveyed to him, called Front street, and extending to the Ohio river in front of the city of Covington. The conveyances were made in 1829, under two acts of assembly—the first in 1827, which authorized the trustees with the consent of the adjacent lot owners to change a part of the original town; the second act authorized the trustees to make and receive conveyances corresponding with the changes authorized by the first act.

The preamble of the act, and all the facts in the case, show that it was necessary, and that it was the intention of the trustees to sell the street on the river, which was well nigh washed away, and still washing away, and so narrow at one point as to be almost useless to the public as a passway.

The presumption is, that all the exchanges made with Carneal were fairly made, and for the public interest, is proved by the long acquiescence in the

arrangement, and the town is still in the enjoyment of the property conveyed by Carneal, or exchanged for that sued for, and without offering or being able to restore it to him.

From the date of the conveyance to Carneal by the trustees he took possession of Front street, which extended to the Ohio, and used it for such purposes as he desired until 1831, when he sold to McNickle, who in the same year erected a rolling-mill upon the ground, since which time it has been notoriously held, used, and occupied under Carneal's deed, and by passing the materials each way from the mill to the river, and passing water from the river to the mill for generating steam, and by an actual inclosure existing nearly all the time; and it was not until 1851, about nineteen years and a half after the mill had been commenced, and some years after portions of the mill had been burnt down, and in view of and with the acquiescence of the public rebuilt, so as to cover a larger slip than before, that the city of Covington, acting upon the notion that the conveyance of the slip by the trustees was void, either because the legislature had not authorized it, or because the legislative power was incompetent to authorize, it and supposing that Carneal's possession was not of a character to oust the public right, sought to recover from McNickle's heirs the fruits of his labor and fortune expended upon property, which, under a public act of the town, through its proper agents, and by the acquiescence of all the citizens for more than twenty years, was believed to be his own.

The object of the legislature in passing the acts of 1827 and 1829, as shown by the preamble of the acts, and the construction given to them at the time of action under them, and the long acquiescence of all concerned, should have their proper weight in the decision of the right and power of the trustees, and adjudication on the effect of their acts. Such a course is sanctioned by the case of *Transylvania vs City of Lexington, supra,* and *Mason vs Rogers,*

cited by my coadjutor. In the adjudications in this court, in which the legal condition of strips of land between towns, and binding on navigable rivers, has been considered, where such slips have been dedicated to public use, they have been sometimes called streets, sometimes commons; in this case the original plat shows and calls the street next to the river Front street, fifty feet wide, while in the dedication, on the corner of the map, the whole street is called a common. There is, in fact, no line upon the map designating a street fifty feet wide, or indicating a separation of one part of it from another, or any division of the space between the lots and the edge of the river; it was all public ground, and there is no difficulty in understanding the word street in the enacting clause, as referring to and including the slip in question, which is denominated a street on the platt, and is certainly included, without a specific name,-in the preamble of the statute.

The right of the appellees to hold the ground in contest is denied upon two grounds: 1. That the legislature had not the power to authorize the sale. 2. That if authorized the requisitions annexed to the authority have not been complied with. Upon the first ground nothing farther will be said, than that the general authority to alter certain parts of the town necessarily authorized a change in the public grounds of that part of the town, at the discretion of the trustees, or by agreement between them and the owners of adjacent lots. The act of 1829 shows that it was the intention to include the change of public into private property, and of private into public property. The consent of the lot owners could only be necessary to change the public into private property. The other requisitions are not conditions, but merely directions or mandates to the trustees, who were officers of the state as well as of the town, as to the manner of evidencing the requisite consent. And after such a lapse of time and acquiescence it will surely be presumed that the directions were

CITY OF COVING-
TON
vs.
McNICKLE'S Hs

complied with. If these views be correct the title asserted by the city was vested in the defendants, and the judgment is right. But if these views be incorrect, still the appellant ought not to recover; the city has placed the property received, beyond the reach of the appellee; cannot restore it to him, and great injustice will result, and the city is estopped from asserting right. She cannot hold both the property conveyed and that received. And as a farther reason why the verdict should stand, there was no demand of possession before suit brought.

Again, the jury had the right to find that there had been an adversary possession of twenty years, under a deed of conveyance, which renders this case unlike that of *Alves vs Town of Henderson, &c.* In this case there was no wrongful entry by Carneal upon an existing possession; no ouster, which being without right, should be confined to the *pedis possessio* or actual inclosure of the wrong doer, but extended to the limits of the boundary prescribed by the deed which authorized his entry. The trustees, citizens, and all having any interest were fully apprised of Carneal's claim of right, and all acquiesced in it for upwards of twenty years, and the bar should be as effectual as if the whole had been inclosed.

Sept. 30, 1857.

Judge DUVALL delivered the opinion of the court.

This was an action of ejectment brought in Sept. 1850, by the City of Covington against the heirs of John McNickle, to recover the possession of a portion of what was claimed by the appellants as a part of the public landing, or wharf, of the city, within the boundary included by the Ohio river on the north, Front street on the south, Scott street on the east, and Madison street on the west. The action was finally tried in the Boone circuit court, having been removed there by change of venue from Kenton county. A verdict and judgment having been rendered against the city, she has prosecuted this appeal.

Two leading questions are presented by the record, and have been elaborately discussed in the re-argu-

ment of this case: 1. Have the appellees exhibited a valid legal title to the ground in contest? And 2. If they have not shown a valid title, have they proved such a possession, by themselves, and by those under whom they hold, as to constitute a valid bar to the appellant's right of entry?

The town of Covington was originally established by an act of the legislature, approved February 8th, 1815. On the 15th August following, the proprietors of the land on which the town was laid out, caused to be recorded in the clerk's office of the Campbell county court, a map or plat of the town, from a copy of which it appears that the strip of ground lying between Front street and the Ohio river, of which the ground in controversy is a part, was expressly dedicated as a common, " for the use and benefit of the said town." This is so certainly and clearly shown by the plat itself, and by the writing which accompanies and forms a part of it, that no reference need be made to the various cases in which the doctrine of implied dedication has been considered.

The first legislative act which, it is contended, conferred upon the trustees of Covington power to dispose of any part of this common, is the act approved December 31, 1827, and is as follows:

" Whereas, it is represented to the General As-
' sembly of the commonwealth of Kentucky, that the
' Front street in the town of Covington, below Scott
' street runs into the Ohio river, preventing thereby
' any communication down the bank of said river;
' and whereas, it is believed that an alteration in that
' part of said town below Scott street, and the alley
' running west between Third and Second streets, to
' the lower line of said town, thence with said line
' to the Ohio river, thence up the Ohio river to Scott
' street, would be to the interest of the citizens of
' said town. Therefore,

"*Be it enacted by the General Assembly of the Com-*
' *monwealth of Kentucky*, That a majority of the trus-
' tees of said town, with the consent of the owners of

City of Coving-
ton
vs.
McNickle's Hs

' the lots in that part of said town, may make any al-
' teration in the street or streets, alleys or lots of said
' town, as may be agreed upon by and between said
' trustees and the owner or owners of said lots,
' which alteration shall be signed by a majority of
' the trustees of said town, and the owner or owners
' of said lots, and certified by the clerk of the board
' of trustees of said town to the clerk of the county
' court of Campbell county, who shall record the
' same. And it shall be the duty, also, of the clerk
' of the board of trustees of said town, to record any
' such alterations in the record book of the trustees
' thereof; which alteration, if made, shall have the
' same force and effect as though it formed part of
' the original plan of said town.

"Sec. 2. *Be it further enacted,* That it shall and
' may be lawful for the trustees of said town, with
' the consent of any owner or owners of any entire
' block or half block of lots below Scott street, to
' close up any alley or alleys running through the
' same: *Provided,* That the same shall be carried to
' the record in the same manner as is provided for in
' the preceding section."

The next act is that of January 12, 1829, which is
in the following words:

"Whereas, an act passed at the last session of the
' General Assembly, approved December 31, 1827,
' whereby the trustees of the town of Covington,
' in the county of Campbell, were authorized to make
' certain alterations and changes in a part of said
' town, as to the positions of streets, alleys, and lots
' but in said act, when the alterations should be
' made, no power was given to the trustees of said
' town either to receive or make deeds of conveyance
' to carry into complete effect said alterations. To
' remedy the defect in said act,

"Sec 1. *Be it enacted by the General Assembly of the*
' *Commonwealth of Kentucky,* That in all cases where
' the trustees have made, or shall hereafter, in pur-
' suance of the provisions of the said act, make, any

' alterations in the streets, alleys and lots of ground,
' to make and execute deeds of conveyance to the
' person or persons who, by contract, are or may be
' entitled to the same; and also, in further fulfillment
' of said alterations now made or to be made, ac-
' cept and receive deeds of conveyance to them and
' their successors in office, which deeds, when made
' agreeable to the laws now in force, shall vest the
' right, title, and interest of the grantor or grantors, in
' the grantee or grantees."

The remaining sections of this act relate to mat-
ters not connected with the subject of this contro-
versy.

On the 10th February, 1830, the trustees, and the
proprietors of lots lying within the above defined
boundary, entered into the following agreement:

"We, the undersigned, trustees of the town of
' Covington, and the exclusive proprietors of lots in
' that part of said town which lies below Scott street,
' and between Third street and the Ohio river, do
' hereby assent and agree to the several alterations
' and changes represented by the accompanying map
' in that part of said town, as made and directed by
' said trustees in pursuance to an act of the General
' Assembly of Kentucky, approved December 31st,
' 1829. In witness whereof," &c. (Signed by the
trustees and the proprietors.)

The map referred to in this agreement is copied
into the record, and is entitled, "a survey and plat of
' the alterations and changes of certain streets and al-
' leys made and agreed upon by the trustees of Coving-
' ton, and the proprietors of lots in that part of said
' town of Covington which lies below Scott street
' and between Third street and the Ohio river, in
' pursuance to an act of the General Assembly of
' Kentucky, approved December 31st, 1827."

On the 22nd July, 1829, the trustees of Covington
executed to Thos. D. Carneal a deed of conveyance
in which, after reciting that by the two acts of De-
cember, 1827, and January, 1829, they are "author-

City of Coving-
ton
vs.
McNickle's Hs
' ized and empowered to make certain changes and
' alterations in the streets and alleys of that part of
' said town" already described, and that in pursuance
of said acts they had "altered, changed, and discon-
' tinued certain streets and alleys in the part of the
' town aforesaid," "which said alterations, changes,
' and discontinuances will more fully appear by ref-
' erence to a plat of the part of the town aforesaid,
' and the agreement thereunto annexed—they con-
' vey to Carneal, (for the consideration therein set
' forth,) a part of Second street, which had been dis-
' continued; also a part of certain alleys which had
' been discontinued; and, *also, all that piece or parcel of*
' *ground lying north and front of the lots of said town,*
' *below Scott street, and between said lots and the Ohio*
' *river through which Front street passes, as designated*
' *and laid down on said original map of said town.*"

Carneal, on the same day, in consideration of this
conveyance, by deed containing substantially the
same recitals, conveyed New street to the trustees,
by metes and bounds.

On the 10th day of May, 1831, Carneal conveyed
by deed to John McNickle, the ancestor of the ap-
pellees, certain lots defined by metes and bounds,
which embraced the ground in contest.

Such is the title exhibited by the appellees, and
relied upon by them as sufficient to defeat the claim
of the appellant.

It has been repeatedly decided by this court that
the trustees of a town have no authority to alien or
convey property of this discription from the uses to
which it was dedicated. (*Buckner vs Trustees of
Augusta,* 1 *Marsh.* 9; 16 *B. Mon.* 168.) And whether
the legislature can constitutionally confer such pow-
er is a question which has not been directly or au-
thoritatively decided by this court, although strong
intimations are to be found in several cases against
the existence of the power    In the case of the *City
of Louisville vs Bank U. S. et al.* 3 *B. Mon.* 157, it is
said that the strip of ground between Water street

'1. Trustees of
towns have no
power to convey
ground which
has been dedi-
cated to the use
of the public;
and whether the
legislature can
constitutionally
authorize them
to do so is ques-
tionable. (*Lou-
isville vs. Bank
U. S , &c.*, 3 *B.
Mon.*157; *Alves,
&c., vs. Town of*

and the river "was intended to be always kept open.
' We cannot believe that the legislature of Virginia
' ever intended that it should be sold as absolute pri-
'' vate property.  Having been once dedicated to
' public use the trustees, without legislative authori-
' ty, would never have had the power to sell the ab-
' solute title to any portion of it, and had it not been
' sold prior to the adoption of our constitution, the
' property holders of Louisville would have been pro-
' tected in their enjoyments of its easements, even
' against legislative power, without making adequate
' compensation to them in money."   And in the case
of *Alves, &c. vs Town of Henderson*, 16 *B. Mon.* 170,
it was held, that the act of the legislature, the effect
of which was then under consideration, did not pro-
fess power to revoke the dedication of a similar slip
of ground, "nor was it competent," says the opinion,
"for the legislature to do so, since that would have
been taking away the property of the town, and of
its citizens."   The case of *Transylvania University vs
City of Lexington*, only settled the principle that the
*streets* of a city are, like other public highways, sub-
ject to alteration and even occlusion by the sovereign
will for the common weal.   And this, upon the
ground that the right of an owner of land in a town
or city, to the use of the contiguous street, is an ap-
purtenant right, the extent of which depends on cir-
cumstances, and cannot, as to each proprietor of
ground, be co-extensive with all the streets and al-
leys of the city.   The right to the use of a public
common or landing, on the other hand, "belongs
' equally not only to lot-holders, but to all inhabi-
' tants, and to all individuals of the state according
' to their various necessities or convenience, and it is
' a right which belongs to future as well as to pres-
' ent lot-holders and inhabitants."   (*Alves vs Hender-
son, supra.*)

It is not necessary, however, to our present pur-
pose, to decide this question of legislative power.
The proper construction of the two acts of the legis-

CITY OF COVING-
TON
*vs.*
McNICKLE'S H₈
*Henderson,16Ib.
170; Transylva-
niaUniversity vs.
City of Lexing-
ton,3B.Monroe,
28.*)

CITY OF COVING-
TON
vs.
McNICKLE'S Hs

lature, under which the power is claimed, and not their validity, is the only point to which our inquiries need be directed.

It is insisted, on the part of the appellees, that the preamble of the act of 1827 proves that the portion of the public common which was embraced in the deed to Carneal, was intended to be subjected to the power of alteration, conferred, by that act, upon the trustees; and that the subsequent act of 1829 strengthens and sustains this construction.

The preamble in question sets forth, briefly, the condition of Scott street at that time, the inconvenience resulting from it, and the proposed remedy—consisting of "an *alteration* in that part of said town, below Scott street," &c., going on to define the boundary within which the power of alteration was to be exercised. It neither purports to confer authority, or to point out the mode in which it is to be applied. For all this, we are to look to the enacting clause. There we find the power clearly defined and limited. By the first section the trustees are authorized, with the consent of the owners of lots *in that part of said town*, to make "any alteration in the *streets, alleys*, or *lots* of said town, as may be agreed upon," &c. If the sale or alienation of the public common was intended to be authorized by the legislature why was it not included in this enumeration of the other subjects of the power? The word "common," as applied to the ground between Front street and the river, had a meaning as definite and as certain and as well understood, as the word street, alley or lot; and the power given the trustees to alter streets, alleys, and lots cannot therefore be construed to comprehend a power to alter or alienate the common.

A well known rule for the construction of statutes,
which, though ancient, is always adhered to, is that
the general words in one clause of a statute may be
restrained by the particular words in a subsequent
clause of the same statute. The argument here

ℱ 2. In the con-
structionof Stat-
utes the general
words in one
clause may be
restrained by the

however is, that the general words, and words of mere description contained in the preamble of the act we are considering, must control the particular words and special provisions of the enacting clause.

CITY OF COVING-
TON
*vs.*
McNICKLE'S Hs
particular words
in a subsequent
clause of the
same statute.

The subsequent act of 1829 certainly affords no aid to the construction contended for. The preamble of that act recites that by the provisions of the act of 1827, the trustees were authorized to make certain alterations in a part of said town, "as to the position of certain *streets, alleys and lots,*" and the first section provides for the execution of conveyances *only* in cases where the trustees had made, or should thereafter make alterations in the *streets, alleys or lots.* The provisions of the two acts are perfectly consistent—the one giving the trustees power to alter the streets, lots and alleys, and the other giving them power to convey when *such* alterations should be made.

The survey and map referred to, fail to show that any alteration whatever was, in point of fact, made, which involved or affected the public common. Nor does the agreement between the proprietors and the trustees, of which the map and survey constitute a part, contain any thing which indicates that either the one party or the other contemplated the disposition which was made of the common; but the first mention of, or distinct reference made to the slip of ground in contest, is to be found in the conveyance from the trustees to Carneal.

Construing these several acts therefore with reference to each other, and to their subject matter and context, we are satisfied that the legislature intended to confer no power upon the trustees of Covington, by alienation or otherwise, to appropriate to private use, any portion of this slip of ground which had been dedicated to the use, not of the owners of lots contiguous to it only, but to the use of all the inhabitants of the town, and all individuals of the state. The object of the legislature was simply to authorize the remedy of an inconvenience occasioned by the action of the river upon its bank. The

City of Coving-
TON
vs.
McNickle's Hs

remedy was to consist of a change in the position of certain streets, alleys and lots within a defined boundary. To the accomplishment of this purpose, it has not been shown that the exchange or sale of a part of the public landing or common, was either necessary or proper.

It results therefore that the conveyances under which the appellees set up title to the ground in contest, are, to that extent void.

2. We proceed in the next place, briefly to consider the question of possession. It is admitted that the possession of the appellees and of their ancestor is insufficient, and that to make out a bar by 20 years possession, the holding of Carneal, prior to his transfer to McNickle, must be relied on. Upon this point, therefore, the character and extent of Carneal's possession need alone be inquired into.

What then, was the character and extent of Carneal's possession of the slip of ground in contest from the date of his purchase to that of his sale to McNickle?

The substance of the proof upon this point is to be found in the testimony of Carneal himself, corroborated in the main, by that of Arnold, and is to this effect: That at the date of the deed from the trustees, Carneal owned all the land on Front street opposite the strip in contest and *claimed* to low-watermark, that he built a dwelling house and other improvements where he lived, south of Second street; that he was in the habit of landing his skiff on the river shore, and whilst building his house, landed his boats with his timber for building at this point, and by means of skids constructed on the bank, removed the timber from the boats to his building as he used it. That other persons also used the same landing for similar purposes whenever they pleased, but never adversely to him. That he sold his property to McNickle in 1831. These are the only *facts* proved which indicate the nature of Carneal's possession. Was it adverse to the right of the other in-

habitants of the town to the use of this ground, and was it such a possession as, if continued for 20 years, would have constituted a bar to the right of the city under the original dedication?

We think not. And this conclusion is sustained no less by considerations of reason and propriety and public policy, than by former adjudications of this court.

In the case of *Alves &c. vs. Town of Henderson*, 16 *B. Monroe*, 172, it is said, "that the public right [to the use of a piece of ground in a town or city, which had been dedicated as a common] could not be ousted by a mere claim of *title* or possession, or by any thing less than an actual private occupancy or exclusive use, evidenced by *inclosure*, and that it could not be defeated except by a continued adverse occupancy, or exclusive possession, *thus evidenced*, during twenty years before the assertion of the public right by suit or action. To this extent only is it understood that, in the case of *Rowan's ex'ors vs. Portland*, 8 *B. Monroe*, 259, the public right was held to be barred by an adverse possession of twenty years." The facts of the case were briefly these: Alves and others united with him in interest, had conveyed to the citizens of Henderson, about the year 1825, their title to and interest in certain designated lots and streets in the town. In consideration of this conveyance, a number of the citizens and lotholders. of Henderson, conveyed at the same time to Alves and others whose interests he acquired, all the right, title, and interest of the grantors in and to the ground lying between Water street and the river, and which had been originally dedicated as a public common. These deeds appear to have been made in compromise of the claim set up by Alves &c., to the property mentioned, all the citizens of the town consenting to it, and this compromise was ratified by an act of the legislature in 1827. Alves claimed to have been in possession of the ground mentioned for twenty-five years, claiming it as his own under these conveyan-

3. The right of the public to ground in a city or town, which has been dedicated to the use of the public, can not be divested by a mere claim of title or possession, "or any thing less than actual private occupancy or exclusive use, evidenced by an inclosure, and so continued to be held adversely for twenty years before the assertion of the right of the public by suit or action."

CITY OF COVING-
TON
*vs.*
McNICKLE'S Hs

ces, ratified and sanctioned by legislative enact-
ment—the trustees and citizens all acquiescing in
and recognizing his title and possession; that the
citizens having received his title to a vested interest
in the town and having claimed under it ever since,
the chancellor could not place the parties in *statu quo*,
and he therefore claimed to be protected in his title
and possession. His bill was dismissed however,
upon the grounds stated in the above extract from
the opinion.

This statement of the facts is a sufficient answer
to the argument by which the learned counsel un-
dertake to distinguish the case under consideration
from that of Alves. The two cases are analogous in
every essential particular, and the principle settled in
the one is applicable to the other. If the possession
of Alves, under the circumstances referred to, was
held to be unavailing, that of Carneal must cer-
tainly be regarded as equally insufficient, to say the
least.

It is furthermore insisted that a previous demand

4. When a party
claims a posses-
sion under a void
conveyance no
demand of pos-
session is neces-
sary before suit
brought to re-
cover the pos-
session.

of the possession was necessary to enable the city to
maintain the action. We think not. The convey-
ance from the trustees to Carneal was not voidable
merely, but void, investing the grantee with no title
or right whatever, not even that of a tenant, or *quasi*
tenant, such as is acquired by a parol purchase of
land, and a possession under it. In the latter case,
the contract is not void under the statute of frauds
as expounded by this court in numerous cases, but
voidable merely, and for that reason, the vendor is
not entitled to the possession until he shall have
manifested his election to disaffirm the contract, by a
demand of the possession. It is obvious that the
principle does not apply to the case of a possession
held under a void deed which can have no beneficial
operation.

Nor does the fact that the city is in possession of

5. Trustees of a
town conveying
a part of the

the land conveyed by Carneal as the consideration
in part of the conveyance from the trustees to him,

estop the city from asserting her title to the ground in contest. What weight, if any, this circumstance might be entitled to in a court of equity we do not determine, but it is certainly unavailing in this action, for any purpose. There is perhaps no case to which this principle applies in a court of law except where a party seeks the rescision of a contract entered into whilst an infant.

We deem it unnecessary to notice the questions made upon the several instructions objected to on both sides, as it is probable that the same or similar questions will not arise upon another trial.

The judgment is therefore reversed, and the cause remanded for a new trial, and for further proceedings not inconsistent with the principles of this opinion.